# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **SMARTFLASH LLC,** *et al.,* | § | |
| | § | |
| **Plaintiffs,** | § | **CASE NO. 6:13-cv-447-JRG** |
| | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **APPLE, INC.** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

| | | |
|---|---|---|
| **SMARTFLASH LLC,** *et al.,* | § | |
| | § | |
| **Plaintiffs,** | § | **CASE NO. 6:13-cv-448-JRG-KNM** |
| | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **SAMSUNG ELECTRONICS, INC.** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

| | | |
|---|---|---|
| **SMARTFLASH LLC,** *et al.,* | § | |
| | § | |
| **Plaintiffs,** | § | **CASE NO. 6:14-cv-435-JRG-KNM** |
| | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **GOOGLE, INC.** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

| | |
|---|---|
| **SMARTFLASH LLC,** *et al.,* | § |
| | § |
| **Plaintiffs,** | §     **CASE NO. 6:14-cv-992-JRG-KNM** |
| | § |
| **v.** | § |
| | §     **JURY TRIAL DEMANDED** |
| **AMAZON.COM, INC.** *et al.,* | § |
| | § |
| **Defendants.** | § |

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) the Motion To Stay Litigation Pending Covered Business Method Review filed by Defendant Apple, Inc. (Apple) (Dkt. No. 546 in 6:13-CV-447, hereinafter Apple Motion) and; (2) the Renewed Motion to Stay Litigation Pending Covered Business Method Review filed by HTC America, Inc., HTC Corporation, Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., Samsung Telecommunications America, LLC's (collectively, Samsung)[1] (Dkt. No. 495 in 6:13-CV-448, hereinafter Samsung Motion).

After receiving these motions, the Court ordered briefing in the related Google and Amazon cases on the issue of whether a stay is warranted. Accordingly, also before the Court are (3) Google, Inc.'s (Google) Response to the Court's May 4, 2015 Order (Dkt. No. 164 in 6:14-CV-435) and Google's Motion to Stay Litigation Pending Covered Business Method Review (Dkt. No. 167 in 6:14-CV-435, hereinafter Google Motion); and (4) the Brief In Support of Stay of Litigation Pending Review of the Asserted Patents filed by AMZN Mobile, LLC, Amazon Web Services, Inc., Amazon.Com, Inc., Amazon.com, LLC, Audible, Inc.'s (collectively, Amazon) (Dkt. No. 37 in 6:14-CV-992, hereinafter Amazon Motion).

---

[1] For ease of reference, the Court refers to the various Defendants in the Samsung litigation as "Samsung."

After considering the briefing, and for the reasons discussed below, the Apple Motion and the Samsung Motion are **DENIED**, and the Google Motion is **GRANTED**. Further, the Court **ORDERS** that the Amazon action is **STAYED**.

**<u>BACKGROUND</u>**

The first litigation related to all of the above-captioned cases began in this Court approximately two years ago. Since that time, both the parties and the Court have expended significant resources in these highly contentious cases.[2]

### *The Apple and Samsung Litigations*

On May 29, 2013, Smartflash filed separate patent infringement suits against Apple and other defendants (who have since been dismissed) (the -447 case) and Samsung (the -448 case). In both cases, Smartflash asserted the same six patents: U.S. Patent Nos. 7,334,720 ('720 Patent); 8,033,458 ('458 Patent); 8,061,598 ('598 Patent); 8,118,221 ('221 Patent); 8,336,772 ('772 Patent); and 7,942,317 ('317 Patent).

Between March 28 and April 3, 2014 (ten to eleven months after the case was filed), Apple filed twelve separate petitions for covered business method (CBM) review—two for each of the patents-in-suit—on anticipation and obviousness grounds (§ 102 & § 103). On the same day it filed its last petition, Apple filed a motion to stay the -447 proceedings pending completion of the CBM reviews at the Patent Trial and Appeal Board (PTAB). A month and a half later, Samsung filed a motion to stay based on Apple's petitions, requesting a stay the in -448 case if the Court found good cause to stay the -447 case. The Court denied both motions without prejudice on the grounds that the PTAB had not yet instituted any reviews, and as such, the issue was speculative.

---

[2] For ease of reference, a timeline of events is included as Appendix A to this Opinion.

In late September 2014 (sixteen months after the case was filed), a few days before the PTAB's six-month deadline for a decision on Apple's twelve § 102 & § 103 CBM review petitions, Samsung filed ten of its own petitions for CBM review. As grounds for its petitions, Samsung asserted anticipation, obviousness, and unpatentable subject matter (generally governed by 35 U.S.C. § 101). Four days later, the PTAB granted Apple's CBM review petitions on several claims across four of the patents but denied review for the majority of challenged claims, including those ultimately asserted against Apple during trial. Apple did not re-file its motion to stay pending CBM review, and the case continued to proceed toward resolution.

In late October 2014 (seventeen months after the case was filed), Apple and Samsung filed motions for summary judgment in this Court, including a motion on § 101 grounds. Beginning on October 30 and continuing until November 25, 2014 (eighteen months after the case was filed), Apple also filed six more petitions for CBM review before the PTAB, raising § 101 grounds. Just over a month later, in December 2014, the Court held a joint hearing on dispositive and *Daubert* motions in the -447 and -448 cases. At that hearing, the Court heard argument on twenty-two motions[3] in addition to arguments that led to additional claim construction briefing. In the following weeks, the Court issued written rulings on all of the disputes raised in the hearing on dispositive and *Daubert* motions and issued a supplemental claim construction order.

The Court held a joint pretrial conference in the -447 and -448 cases on January 6, 2015, where it ruled on motions *in limine*. At this pretrial conference, for the first time, Defendants raised a subject matter jurisdiction defense based on questions of patent ownership. The Court ordered briefing on the question of patent ownership and issued a written ruling. A few days

---

[3] Several of the motions were identical and filed in both cases.

after the -447 and -448 cases were reassigned to the undersigned per General Order,[4] the Court set a date for trial in the -447 case and postponed setting a trial date in the -448 case until after the conclusion of the -447 trial.

In mid-January 2015 (twenty months after the case was filed), Samsung filed an additional CBM review petition challenging the '772 Patent under § 101. Six days later, Magistrate Judge Mitchell issued a Report and Recommendation that recommended denying Apple's and Samsung's motions for summary judgment under § 101. After considering both defendants' objections, the Court issued an Order adopting the Report and Recommendation and denied both defendants' motions for summary judgment under § 101.

In the following weeks, the Court held a second and a third pretrial conference, the parties elected their final claims and prior art references, and the -447 (Apple) case proceeded to trial. On February 24, 2015—after a six-day jury trial—the jury returned a verdict in favor of Smartflash, finding that Apple infringed all of the asserted claims, that Apple willfully infringed the asserted claims, and that all of the asserted claims were valid.

On April 10, 2015, the Court set a post-trial briefing schedule in the -447 case. The Court ordered that the parties file their post-trial motions by May 1, 2015 and their responses by May 26, 2015. These motions and responses are all currently pending before the Court. In addition, the Court set the post-trial motions for a hearing on July 1, 2015. Furthermore, after the conclusion of the -447 (Apple) case, the Court (on March 18, 2015) set August, 3, 2015 as the date for trial in the -448 (Samsung) case.

In late March and early April 2015 (twenty-three months after the case was filed), the PTAB instituted CBM review in seven proceedings filed by Apple and Samsung. These reviews include § 101 grounds on at least one claim of each challenged patent, including five of the six

---

[4] General Order 14-20 issued December 19, 2014, and addressed the assignment of cases in the Eastern District of Texas in light of the confirmation of Judges Amos Mazzant and Robert Schroeder and the upcoming retirement of then Chief Judge Leonard Davis.

originally asserted patents.[5] On May 28, 2015 (twenty-four months after the case was filed), the PTAB instituted review of the challenged claims of the sixth patent—the '772 Patent. Final decisions on the instituted petitions from the PTAB are due within a year of institution. AIA § 18(a)(1); 35 U.S.C. § 326(a)(11).

Apple and Samsung filed the present motions to stay the litigation pending the CBM reviews on April 10, 2015, and April 23, 2015, respectively.

### *The Google and Amazon Litigation*

In the Samsung litigation, Smartflash asserts that Google Play—installed on accused Samsung products—infringes its patents. Google agreed to defend Samsung in the -448 litigation, and Google and Samsung share common counsel. On May 7, 2014, Smartflash filed a separate lawsuit against Google (-435 case). On December 23, 2014, Smartflash filed a lawsuit against Amazon (-992 case). In both cases, Smartflash asserts the same six patents originally asserted in the Apple and Samsung cases as well as a seventh patent that issued on August 5, 2014—U.S. Patent No. 8,794,516 ('516 Patent). After receiving the motions to stay in the Apple and Samsung actions, the Court ordered briefing on the issue of a stay in the Google and Amazon actions. Two days after the Court ordered this briefing, on May 6, 2015 (a year after the -425 case was filed), Google filed the first of five petitions for CBM review (all based on § 101 grounds). Additionally, the *Markman* hearing in the Google action was originally set for May 14, 2015, but the Court postponed the hearing until June 4, 2015, to consider the briefing on the stay issue.

Finally, from April 30 to May 16, 2015, Apple filed eleven additional petitions for CBM review that all also include § 101 grounds. In all, according to Docket Navigator, Apple, Samsung, and Google have filed a total of forty-eight petitions for CBM review against

---

[5] The '221 Patent, the '720 Patent, the '458 Patent, the '598 Patent, and the '317 Patent.

Smartflash.[6] This number continues to increase, as the latest CBM review filed by Apple occurred on May 16, 2015. According to Smartflash, these CBM review petitions are the most petitions filed against a single entity in the AIA's history.

## APPLICABLE LAW

The Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (September 16, 2011) (AIA) provides in § 18(a)(1) for the creation of "a transitional post-grant review proceeding for review of the validity of covered business method patents." Section 18(d)(1) of the AIA defines the term "covered business method patent" as follows:

> a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.

Section 18(b) codifies the request for a stay for such transactional proceedings of covered business method patents and states:

> (1) IN GENERAL.—If a party seeks a stay of a civil action alleging infringement of a patent under Section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on—
>
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B) whether discovery is complete and whether a trial date has been set;
>
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.
>
> (2) REVIEW.—A party may take an immediate interlocutory appeal from a district court's decision under paragraph (1). The United States Court of

---

[6] DOCKET NAVIGATOR, https://www.docketnavigator.com/browse/results/3c238ab8-1476-abac-b2ba-be8660ab2141(last visited May 26, 2015) (running search for Document Type: PTAB Petition for Covered Business Method Patent Review; and Party: Smartflash)

Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo.

Traditionally, the district court has broad discretion to stay proceedings as an incident to its power to control its own docket. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The recent decision in *VirtualAgility Inc. v. Salesforce.com, Inc.* is the first appellate decision addressing the proper application of the factors of § 18(b) of the AIA. 759 F.3d 1307 (Fed. Cir. 2014). The Federal Circuit jointly addressed "Factors (A) and (D): Simplification of Issues and Reduced Burden of Litigation." *VirtualAgility*, 759 F.3d at 1310. Under these factors, the court found that, while parties may put forward similar arguments for the simplification-of-issues factor and the burden-of-litigation factor, both "factor[s] are listed separately in the statute [and] [t]hus, even when both factors point in the same direction—in favor of or against the stay—they continue to be separate, individual factors which must be weighed in the stay determination." *Id*. at 1313. It is "improper [for a district court to] review . . . whether the PTAB was correct in its determination that the claims of the . . . patent were more likely than not invalid." *Id*. at 1314. It "weighs heavily in favor of granting the stay" if the PTAB grants CBM review on every claim of the asserted patents. *Id.* The court found that a "simplification argument would be stronger if all of the prior art or relevant invalidity issues were in the CBM review, as this would entirely eliminate the trial court's need to consider validity in the event that some claims survive CBM review." *Id.*

"Under the [AIA's] statutory scheme, district courts have no role in reviewing the PTAB's determinations regarding the patentability of claims that are subject to CBM proceedings." *Id.* at 1313. If the PTAB has issued a determination, a district court's review would be "a challenge to the PTAB's 'more likely than not' determination [that] amounts to an improper collateral attack on the PTAB's decision to institute CBM review." *Id.* "If the district

court were required to 'review' the merits of the PTAB's decision to institute a CBM proceeding as part of its stay determination, it would undermine the purpose of the stay." *Id.*

The Federal Circuit next addressed "Factor (B): Whether Discovery Is Complete and Whether a Trial Date Has Been Set." *Id.* at 1315. It is "not error for the district court to wait until the PTAB ma[kes] its decision to institute CBM review before it rule[s] on the motion." *Id.* "While a motion to stay could be granted even before the PTAB rules on a post-grant review petition, . . . the case for a stay is stronger after post-grant review has been instituted." *Id.* at 1316. "Generally, the time of the [filing of the] motion is the relevant time to measure the stage of litigation" for factor (B). *Id.* at 1317. There is "no error in also taking into account the stage of litigation as of the date that CBM review was granted." *Id.* at 1317 n.6. "Similarly, the district court may consider evidence that develops after the date of the stay motion—for example, the fact that the PTAB granted the CBM petition, any claim amendments proposed or entered in the post-grant proceeding, further evidence of competition, and so on—as it pertains to the other three factors." *Id.*

Finally, the Federal Circuit addressed "Factor (C): Undue Prejudice or Tactical Advantage." *Id.* at 1326. "[C]ompetition between parties can weigh in favor of finding undue prejudice." *Id.* at 1318 (citation omitted). "[W]hether the patentee will be unduly prejudiced by a stay in the district court proceedings during the CBM review, like the irreparable harm-type inquiry, focuses on the patentee's need for an expeditious resolution of its claim." *Id.* "In some circumstances, a defendant's decision to save key pieces of prior art for district court litigation in case its CBM challenge fails would weigh against a stay." *Id.* at 1320. "Even though the "splitting" of prior art is allowed by statute in the sense that litigation estoppel does not attach to art that could have been, but was not, raised in CBM review, such behavior can still give the

movant a clear tactical advantage within the meaning of § 18." *Id.* "Failure to advance irrelevant or redundant prior art would not demonstrate a clear tactical advantage." *Id.* at 1320 n.8.

## ANALYSIS

All four Defendants request a stay in their respective cases. The Court analyzes each case individually under the applicable statutory factors.

*Apple Litigation (-447 case)*

Apple argues that the first and fourth statutory factors weigh strongly in favor of a stay, and that the second and third factors also favor a stay. Smartflash argues the opposite.

**Factor (A): Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial**

*The Parties' Positions*

Apple argues that a stay will likely eliminate the issues in this case entirely because the PTAB instituted CBM review on two of the four asserted claims at trial (when the briefing took place) and has now instituted review on the remaining two claims. Apple acknowledges that all the asserted claims are only challenged on § 101 grounds. Further, Apple asserts that the PTAB will likely ultimately find all the asserted claims ineligible because, as of December 31, 2014, the PTAB has invalidated 100% of the claims where it instituted CBM review on § 101 grounds. (*Id.*) Apple also points out that questions arising under § 101 are questions of law. (*Id.*) According to Apple, the cancellation of asserted claims would completely eliminate the need for further proceedings in the case. (*Id.*)

Smartflash counters that a stay cannot streamline a trial that already occurred or simplify an issue no longer in question. (Smartflash -447 Response at 2–3, Dkt. No. 553 in 6:13-CV-447). Smartflash argues that a stay will only allow "two separate tribunals to reach two separate conclusions regarding a single issue of law." (*Id.* at 3). Smartflash asserts that the Court already determined the sole issue on which the PTAB granted CBM review for the asserted claims—

patent subject matter eligibility. (*Id.*) In Smartflash's view, Apple seeks "a back-door interlocutory appeal of the Court's § 101 Order." (*Id.*) Smartflash argues that instead of trying to convince the Court that its § 101 Order meets the requirements of § 1292(b)—allowing the court to certify an order for interlocutory review—it "illogical[ly]" asks the Court to stay the case for a year while the PTAB decision on the same § 101 issue becomes appealable. (*Id.*) Smartflash contends that Apple's attempt to stay post-trial proceedings for the PTAB to address an already-decided legal issue is exactly the type of extraordinary and extremely rare circumstance contemplated by Congress that warrants denying a stay. (*Id.* at 4).

*The Court's Analysis*

As Judge Bryson[7] has noted, "the most important factor bearing on whether to grant a stay" is the prospect that the PTAB proceeding "will result in simplification of the issues before the Court." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J.). "[B]oth CBM review and inter partes review, like reexamination, are designed to promote the same policy goals." *Id.* at *5. A primary goal of all of these PTAB proceedings is to give "the expert agency that issued the patents in suit[] an opportunity to determine in the first instance whether the patents are valid in light of the cited prior art and to simplify district court infringement proceedings." *Id.* As Judge Bryson further noted, this process can lead to simplification through a number of different benefits[8]: (1) "All prior art presented to the Court will have been first considered by the PTO, with its particular expertise. (2) Many discovery problems relating to prior art can be alleviated by the PTO

---

[7] Sitting by designation. Given the relatively young history of § 18(b), the Court notes that there are not many appellate decisions on motions to stay pending CBM review.

[8] While Judge Bryson was referring to the benefits of the reexamination process and how they "appl[y] equally to inter partes review," (*id.* at *4), the Court finds these same type of benefits apply equally to covered business method review proceedings as well. In fact, Judge Bryson has already stated as much: "[B]oth CBM review and inter partes review, like reexamination, are designed to promote the same policy goals." *Id.* at *5.

examination. (3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed. (4) The outcome of the [PTAB proceeding] may encourage a settlement without the further use of the Court. (5) The record of [the PTAB proceeding] would likely be entered at trial, thereby reducing the complexity and length of the litigation. (6) Issues, defenses, and evidence will be more easily limited in pre-trial conferences . . . . (7) The cost will likely be reduced both for the parties and the Court." *Id.* at *4.

In the present case, none of the policy goals and none of the benefits are furthered by a stay. First, Apple has already challenged the validity of the patents in this Court at the summary judgment stage on almost every potential issue: motions for summary judgment of invalidity under § 101, § 102, and § 103 and two motions for summary judgment of indefiniteness. The Court has already borne the burden of issuing reasoned rulings on the § 101 issues and denied summary judgment motions on § 102 and § 103 grounds. The jury has already passed judgment on § 102 and § 103 grounds as well. From the Court's perspective, there is nothing left to simplify.

Second, only § 101 issues have been raised at the PTAB concerning the claims asserted (and tried) against Apple. This greatly diminishes the role the PTAB will play in determining whether "the patents are valid in light of the cited prior art," as no prior art is needed for the § 101 analysis. It is a pure question of law. Even if trial had not occurred, this fact eliminates the first enumerated benefit that could lead to simplification—that "[a]ll prior art presented to the Court will have been first considered by the PTO, with its particular expertise." *NFC Tech.*, 2015 WL 1069111, at *4.

Third, none of the other benefits leading to simplification will manifest in the present case. For example, "discovery problems relating to prior art" cannot be alleviated as they have already taken place and been dealt with. The "complexity and length of the litigation" will not be

reduced by the record of the PTAB proceeding because the trial has already taken place. "Issues, defenses, and evidence" will not be more easily limited in the pretrial conference; three separate pretrial conferences have already taken place in preparation for the trial which has already occurred. Finally, the cost to the parties and the Court will not be reduced because the overwhelming majority of those costs have already been incurred. As to the other two listed benefits, both are speculative at this stage in the litigation: settlement is speculative given the jury verdict and PTAB cancellation is not guaranteed,[9] despite Apple's belief to the contrary. Accordingly, a stay will neither simplify the issues in question (which have been decided) nor will it streamline a trial that has already taken place.

Fourth, the Court fails to see how staying the case to allow the PTAB to reach a decision on a purely legal matter (§ 101) can simplify any issue either for this Court or the appellate court. The Court reached the § 101 decision in mid-January 2015. The simplest way for the § 101 issue—the sole issue that Apple relies upon for its stay—to reach the appellate court is to let this nearly completed case move forward to appeal.[10] Otherwise, the appellate court will wait a year for the PTAB to actually issue a final decision, and then wait for that decision to be appealed— all the while further expense is incurred. On either path the appellate court will be reviewing the same question of law on the same statutory grounds. Apple has only increased complexity with the PTAB petitions, not reduced it.

This factor weighs against granting a stay.

**(B) Whether discovery is complete and whether a trial date has been set**

*The Parties' Positions*

---

[9] The Court "find[s] it significant that the PTAB granted CBM review on all asserted claims" of the asserted patents. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014). This could result in "the ultimate simplification of issues" if PTAB decides to cancel all the claims. *Id.*

[10] Post-trial briefing is nearly complete. Over 200 pages of post-trial briefing have already been filed, and only replies and sur-replies remain. Furthermore, the final post-trial conference is about a month away.

Apple argues this factor favors a stay because significant post-trial activities remain, such as briefing and oral argument on renewed motions for judgment as a matter of law, motions for a new trial, motions for enhanced damages, and motions for pre- and post-judgment interest. (Apple Motion at 10, Dkt. No. 546 in 6:13-CV-447). Apple contends that the Court still has significant work to do post-trial, and the case is likely to continue on appeal and on remand. (*Id.*) According to Apple, if the PTAB finds all of the asserted claims unpatentable, Smartflash's cause of action is eliminated and the Court must vacate any earlier judgment. (*Id.* (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1347 (Fed. Cir. 2013))).

Smartflash responds that discovery is complete, and the jury rendered a verdict months ago. (Smartflash -447 Response at 6, Dkt. No. 553 in 6:13-CV-447). Smartflash contends that, at this point, seeing the case to its conclusion maximizes judicial economy and party resources because the remaining work to be done is "exceedingly small" compared to the resources already expended. (*Id.* at 6 (quoting *Markets-Alerts Pty, Ltd. v. Bloomberg Fin. LP*, 922 F. Supp. 2d 486, 493 (D. Del. 2013) ("When confronted with a motion to stay in the later stages of a case, the court and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion")). According to Smartflash, the Court must compare the work left to do with the work that has been done. (*Id.* at 7). Smartflash argues PTAB decisions will unlikely come during post-trial proceedings because decisions on two instituted claims (from the '720 and '221 Patents) are not due until April 2016, (*id.*), and review of two claims (from the '772 Patent) was instituted only a day ago.

*The Court's Analysis*

Apple stretches the bounds of reasonableness by arguing that this factor favors a stay. The plain language of the statute states that "the court shall decide whether to enter a stay based

on . . . whether discovery is complete and whether a trial date has been set." AIA § 18(b). Not only has a trial date been set, the trial is over and a jury rendered a verdict on February 24, 2015. Discovery was complete in September of 2014. Apple's Motion to stay was filed months after the milestones named in the statute were passed. The vast majority of resources and work have already been expended by both the Court and the parties in this litigation.

Another consideration that bears on this factor is whether Apple acted with reasonable diligence in filing its petitions for CBM review and after the petitions were granted, in filing its motions to stay. *NFC Tech*, 2015 WL 1069111, *3. The Court concludes that Apple did not. This case (-447 case) was filed in May of 2013. Nearly a year later, on March 28 and April 3 of 2014, Apple filed twelve CBM petitions which did not even raise § 101 grounds. In fact, Apple did not file any petitions for CBM review on § 101 grounds until seventeen months after Smartflash filed suit, just two months before pretrial, and approximately three months before trial commenced.[11] This delay is especially unreasonable given Apple's own statement that "[a]fter Apple became aware of the patents on May 29, 2013, when this case was filed, Apple has had good-faith belief in its strong invalidity and non-infringement defenses [including § 101], as expressed in its discovery responses, contentions, and expert reports." (Apple's Motion for Summary Judgment of No Willful Infringement and No Indirect Infringement at 5, Dkt. No. 267 in 6:13-CV-447). Apple even raised the § 101 defense in its answer filed on July 24, 2013, which is fifteen months before Samsung filed its first CBM petitions on § 101 grounds, sixteen months before Apple filed its first CBM petition on § 101 grounds, and eighteen months before Samsung filed its last petition on § 101 grounds, finally encompassing all the asserted claims in the Apple case. (Apple's Answer, Dkt. No. 29 in 6:13-cv-447). Even though Apple's Motion is based on institution decisions on Samsung's petitions, the timing of all parties petitions effectively

---

[11] After a petition for CBM review is filed, the patent owner has three months to file a preliminary response, and the PTAB will determine whether to institute review within three months of the response. 77 Fed. Reg. 48680, 48692 (Aug. 14, 2012).

guaranteed no institution decision would be issued before the completion of trial. This Court is hard-pressed to find that Apple acted with reasonable diligence in filing petitions raising its § 101 invalidity defense—the only ground that the PTAB instituted review on for the asserted claims in the Apple case. As a result of such conduct, the Court is faced with Apple's motion to stay at the latest conceivable stage of district court litigation.

The Court is left to conclude that this obvious delay negates the intent of the CBM review process. CBM review was described as "offer[ing] a relatively cheap *alternative* to civil litigation for challenging [] patents, and [] reduce the burden on the courts." 157 Cong. Rec. S1367 (Mar. 8, 2011) (statement of Sen. Kyl) (emphasis added). In fact, the apparent, fundamental purpose of the CBM process (introduced by the Schumer-Kyl amendment) is to provide a "cost-efficient *alternative* to litigation." 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) (emphasis added). The policy considerations behind CBM review and inter partes review are similar. *NFC Tech.*, 2015 WL 1069111 at *5 (citing H. Rep. No. 112–98, Part I, at 48 (2011) (statutory post-grant review procedures were designed to be "quick and cost effective alternatives to litigation") (Bryson, J.); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (inter partes review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents) (statement of Sen. Grassley); *id.* at S5319 (daily ed. Sept. 6, 2011) (post-grant review of patents, including inter partes review, was meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Kyl)).

At this late litigation stage, if the Court were to give credence to Apple's arguments, this would serve to encourage parties to misuse CBM review in a manner completely opposite of what Congress intended, by making it into a cost-increasing, post-trial second chance at additional litigation, rather than a cost-effective *alternative* to litigation. Senator Kyl's concern

that "district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time" has no application here. *Id.* In fact, the present situation appears to be the precise inverse of this concern. It is Apple that is attempting to force completed litigation to grind on. With appeals certain to follow post-trial proceedings regardless of the outcome, staying the case now would delay the ultimate resolution of both the § 101 issues and the entire case.

This factor weighs heavily against granting a stay.

## (C) Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party

*The Parties' Positions*

Apple argues that it is unfair and prejudicial to force Apple "to continue to litigate just because it happened to be the first defendant scheduled for trial." (Apple's Motion at 11, Dkt. No. 546 in 6:13-CV-447). Further, Apple argues it would be unjust to make Apple pay damages on ineligible claims merely because it was selected for trial first. (*Id.*) Apple contends that Smartflash would not unduly suffer prejudice because it does not compete with Apple and faces no risk of losses that cannot be made up by damages. (*Id.* at 12). Apple asserts that Smartflash's claims of prejudice are undermined by its choice to wait over five years after '720 Patent issued to file suit. (*Id.* at 12–13 (citing *VirtualAgility*, 759 F.3d at 1319–20)). In Apple's view, the Federal Circuit will eventually have to decide the patent eligibility issue, so "it makes sense to stay this broader-scoped proceeding" to allow the PTAB to make its determination first. *Id.*

Smartflash responds that the Court has already found that Apple's splitting of its invalidity defenses cuts against issue simplification and provides a tactical advantage to Apple. (Smartflash -447 Response at 7, Dkt. No. 553 in 6:13-CV-447 (citing Memorandum Opinion and Order Denying Stay at 8–9, Dkt. No. 175 in 6:13-CV-447)). According to Smartflash, the Federal Circuit confirmed this approach in *VirtualAgility*. (*Id.* (citing *VirtualAgility*, 759 F.3d at

1315)). Smartflash contends the present scenario weighs against a stay even more where "staying a case only to grant the opportunity to re-litigate an identical issue before a different tribunal is a quintessential tactical advantage." (*Id.*) Smartflash argues that a delay is inherently prejudicial and hinders Smartflash's licensing efforts for the patents-in-suit, which expire in 2020. (*Id.* at 8). Smartflash urges that its alleged delay in filing suit does not minimize prejudice to it because only one of the tried patents issued before 2012, half of the tried claims issued only a few months before it filed suit, and that it was excusable for it to develop a complete patent portfolio before asserting its rights. (*Id.*) Smartflash argues that Apple conversely had no justification for not asserting § 101 in its April 2014 petitions and waiting to assert its § 101 arguments until November 2014. (*Id.*) Smartflash argues that Apple's Motion is based on Samsung's § 101 petitions[12] (filed September 16, 2014—sixteen months after the complaint), and that Apple failed to petition on that ground until a month before the initial pretrial conference, November 30, 2014.

Moreover, Smartflash argues that the decisions from either forum will be appealed, and on the current schedule, the Court's decisions will be on appeal before the PTAB issues any final decision. (*Id.* at 9). Smartflash contends that an appeal that can resolve the "entire dispute at once is a far better use of judicial and party resources." (*Id.* (citing *U.S. v. Nixon*, 418 U.S. 683, 691 (1974) ("The finality requirement . . . embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals. This requirement ordinarily promotes judicial efficiency and hastens the ultimate termination of litigation.") (internal citations omitted))). Additionally, Smartflash asserts that Apple will pay on the judgment only if the Federal Circuit affirms the Court's legal

---

[12] Since the time it filed its Motion to Stay, Apple filed additional CBM petitions

determination of subject matter eligibility, and therefore, Apple does not face a competitive disadvantage. (*Id.* at 10).

*The Court's Analysis*

As the Court has previously noted, Smartflash has a recognized interest in timely enforcement of its patent rights, and "that interest is entitled to weight." *NFC Tech.*, 2015 WL 1069111, at *2 (Bryson, J.) (collecting cases); *see also Ambato Media, LLC v. Clarion Co. Ltd.*, 2:09-CV-242, 2012 WL 194172 at *1 (E.D. Tex. Jan. 23, 2012). Further, the Court has an obligation "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. However, the potential for delay alone does not establish undue prejudice. *NFC Tech.*, 2015 WL 1069111, at *2 (Bryson, J.). Instead, courts typically look to other factors like the timing of the stay request, the timing of the administrative review request, the status of the review proceedings, and the relationship between the parties. *See Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013).

i.      Undue Prejudice to Smartflash

Smartflash does not compete with Apple and does not risk loss of market share. Smartflash's licensing efforts may be disrupted by a stay or by the inherent uncertainty about the value of the patents resulting from the PTAB's decision to institute CBM review. Further, Smartflash can be compensated for lost licensing opportunities through monetary damages. Moreover, Smartflash could have sued Apple as early as 2008 when the '720 Patent issued and it knew of Apple's alleged infringement.

ii.     Tactical Advantage to Apple

In this situation, a stay would give Apple a clear tactical advantage. By delaying its petitions for seventeen months, Apple has multiple opportunities to challenge the § 101 validity of Smartflash's patents in two separate forums. *VirtualAgility, Inc.*, 759 F.3d at 1319–20 (noting

that a delay in filing the CBM petitions is relevant to whether defendants sought to gain a tactical advantage or had a "dilatory motive"); *Segin Sys, Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 484 (E.D. Va. 2014) ("[T]wo separate opportunities in two separate forums to challenge the validity of Plaintiffs' patent does raise a concern of an unfair tactical advantage, giving them two bites of the apple as to a central defense."). Failing to point out this clear tactical advantage would encourage parties to engage in gamesmanship with the PTAB and the courts, which runs counter to the policies underlying Congress's decision to open the avenue of CBM review.

As for undue prejudice, there is little evidence that Smartflash would suffer undue prejudice from a stay. However, a stay would present Apple with a clear tactical advantage and encourage gamesmanship through splitting invalidity defenses and delaying filing of CBM petitions. Such practices undermine the fundamental policies of CBM review.

On balance, this factor also weighs against a stay.

**(D) Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court**

*The Parties' Positions*

Apple contends that a stay would conserve resources because the PTAB will more likely than not cancel the asserted claims and eliminate the need for further proceedings in the case. (Apple Motion at 13–14, Dkt. No. 546 in 6:13-CV-447). According to Apple, no extraordinary and extremely rare circumstances exist here to justify denying a stay. (*Id.*) Apple argues that, without a stay, the Court will have to decide issues regarding claims that will likely be cancelled through CBM review. (*Id.* at 14). Moreover, Apple asserts that even cancellation of just two of the asserted claims would require a new damages trial. (*Id.*)

Smartflash responds that the Court has already expended substantial resources resolving the only relevant issue in the instituted CBM reviews. (Smartflash -447 Response at 10, Dkt. No. 553 in 6:13-CV-447). Smartflash accuses Apple and Samsung of intentionally driving litigation

costs up by re-litigating issues in a different forum. (*Id.*) Smartflash contends that the remaining burden on the parties is minimal because post-trial briefs have already been filed and many issues overlap with summary judgment motions, which the Court has already addressed. (*Id.*) Smartflash argues that the congressional and judicial policies behind the finality-of-judgments rule counsel against Apple's argument that this broader-scoped proceeding should be stayed pending resolution of a single issue. (*Id.* at 11 (citing *U.S. v. Nixon*, 418 U.S. 683, 691 (1974))). According to Smartflash, "a swift Federal Circuit appeal could deal with most of these petitions via one consolidated appeal from this case, [but] a post-trial stay will only promote the iterative PTO gamesmanship in which the Defendants are currently engaged." (*Id.* at 13).

*The Court's Analysis*

"Congress's addition of a fourth factor requiring an inquiry into whether a stay will reduce the burden of litigation on the parties and on the court indicates that special attention should be given to minimizing the burdens of litigation." *NFC Tech.*, 2015 WL 1069111 at *2 (Bryson, J.). The analysis of this factor overlaps with the analysis for the first factor because simplifying the issues will usually reduce the burden of litigation on the parties and the Court. *Id.* Nevertheless, Congress expressly included this fourth factor in the statute and it is therefore separately "weighed in the stay determination." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1313 (Fed. Cir. 2014).

As noted above, the legislative history of AIA § 18 makes it clear that the intended purpose of CBM review is to provide a cost-saving alternative forum where the parties can take advantage of the PTO's subject matter expertise in lieu of costly litigation in the district courts. *See* 157 Cong. Rec. H4429 (daily ed. June 22, 2011) ("Section 18 . . . will save 90 percent of the costs incurred in civil litigation.") (statement of Rep. Quayle). Congress apparently hoped the

process would be used to simplify and decrease the burden of litigation on parties and courts in response to abusive litigation tactics.

However, the benefits of having an available cost-saving alternative forum are greatly diminished (if not inverted) here. Apple's delay in filing CBM petitions under § 101 created the situation now confronting the Court: the vast majority of civil ligation costs have already been spent and the heavy burden of litigation has already fallen upon the Court. In the Apple case to date, the Court has issued over 400 pages of orders and opinions. The Court has pored through 971 pages of briefing and reviewed 10,622 pages of associated exhibits on significant disputes, including motions to sever, motions to transfer, motions to strike and exclude, motions for summary judgment, *Daubert* motions, and claim construction briefings. In addition, the Court has held a six-day jury trial, which required the citizens of this district to be involved in jury service. In this effort, the parties and Court have nearly carried the burden of litigation to final judgment; 200 pages of post-trial motions and responses have been submitted, and the final hearing on those motions is about a month away. Meanwhile, in response to Apple's eleventh-hour petitions, the PTAB has just begun its entirely separate effort to duplicate the Court's existing determination of a pure question of law. This situation does not reduce the litigation, it has increased the litigation.

The current post-trial litigation schedule will allow the parties to appeal decisions of the entire litigation several months before the PTAB is likely to issue its final decisions on the same § 101 issues already litigated in this Court. An appeal of the entire litigation would avoid the costly and burdensome prospect of piecemeal appeals that would presumably occur if the PTAB and the Federal Circuit do not invalidate every asserted claim.[13] In essence, a stay would

---

[13] The Federal Circuit has yet to decide an appeal from a final PTAB decision in a CBM review. Of the thirteen appeals from IPR proceedings, it has affirmed all of them, eleven of them by Fed. Cir. R. 36 Summary Affirmance.

"[p]ermit piecemeal, prejudgment appeals," which the United States Supreme Court "ha[s] recognized, undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (internal quotations omitted). If a piecemeal appeal concerning the § 101 issue takes place, and this Court is left with the burden of a new trial but with none of the benefits of appellate rulings on the overwhelming majority of the other issues dealt with at trial (such as Smartflash's damages model), justice and judicial economy will be disserved.[14] Since the goal is to reduce the burden of future litigation, it would make much more sense to send this Court's final decision on § 101, final decision on damages, jury decision on § 102, and jury decision on § 103 for the Federal Circuit to resolve in its entirety.

As other courts have observed, when the case reaches post-trial motions, it is most efficient for the Court to move forward with all post-trial motions so that the Federal Circuit may review the *entire* case on appeal, including the validity of all of the plaintiff's patents, as soon as possible. *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2013 WL 6225202, at *4 (N.D. Cal. Nov. 25, 2013). In the interests of reaching a full and final resolution to the case as quickly as possible, this case presents a set of circumstances which counsel against granting a stay under the fourth factor.

In sum, the first, third, and fourth factors weigh against granting a stay, and the second factor weighs heavily against granting a stay. In this situation, "seeing the case to its conclusion maximizes judicial and party resources," and discourages gamesmanship in filing CBM petitions. Accordingly, a stay of the Apple litigation is unwarranted.

---

[14] Presumably, if the Court held "a new damages trial," as Apple proposes might happen, using an incorrect damages model (as Apple alleges), then that damages model in the second trial could be overturned and remanded for a *third* trial using what the Federal Circuit deems is the correct damages model. It makes more sense for all issues to be appealed at once, as the contrary situation does not "reduce the burden of litigation on the parties and on the Court."

***Samsung Litigation (-448 case)***

Samsung argues that all four factors weigh heavily in favor of staying this action for the duration of the CBM proceedings. Smartflash disagrees.

## (A) Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial

*The Parties' Positions*

According to Samsung, this is the most important factor. (Samsung Motion at 6, Dkt. No. 495 in 6:13-CV-448 (citing *NFC Tech*, 2015 WL 1069111 at *6)). Samsung argues that the PTAB determined that four of the five patents-in-suit are more likely than not invalid under § 101, and that the likely cancellation of the patents would dispose of the entire litigation. (*Id.*) Samsung claims that the PTAB's institution of petitions under § 101 encompass all asserted claims from the '720 Patent (claim 14), the '458 Patent (claim 11) the '598 Patent (claim 7) and the '221 Patent (claims 2 & 11). (*Id.* at 1–2 n.3). Claims 2 and 11 from the '221 Patent are also being reviewed by the PTAB under § 102 grounds in light of a single piece of prior art. (*Id.* at 2 n.3). Samsung—like Apple—also noted that review had not been instituted for the asserted claims in the '772 patent, (*id.* at 2 n.5), but the Court observes that CBM review of the '772 Patent was instituted on May 28, 2015. Additionally, Samsung asserts that cases involving the asserted patents have been multiplying and notes that Smartflash also filed cases against Google, Amazon, and a second case against Apple. (*Id.* at 7). Samsung indicates that Apple will likely appeal claim construction and § 101 findings that will apply across all cases. (*Id.*)

As with Apple, Smartflash responds that the Court has already ruled on the only issue on which the PTAB instituted review for the majority of relevant proceedings—§ 101. (Smartflash -448 Response at 3, Dkt. No. 498 in 6:13-CV-448). Smartflash contends that both the parties and the Court expended substantial efforts on the issue, which included supplemental filings to address new authority. (*Id.* (citing Dkt. Nos. 367, 403 & 421 in 6:13-CV-448)).

According to Smartflash, the only remaining issue in question that the PTAB could determine relates to anticipation from one piece of prior art of just two claims of one of the asserted patents (Claims 2 and 11 of the '221 Patent). (*Id.*) Smartflash argues that a stay would decide nothing with regard to the five other prior art references asserted against the '221 Patent or other claims of the other patents-in-suit. (*Id.*) Smartflash further asserts the same "back-door interlocutory appeal" argument as in the Apple case. (*Id.* at 4–5). According to Smartflash, where a party seeks to stay a case ready for trial while the PTAB decides a previously determined issue of law is precisely the "extraordinary and extremely rare" circumstances envisioned by Senator Schumer. (*Id.* at 5).

Moreover, Smartflash argues that the Court's eventual final judgment would "terminate most of the PTAB proceedings" by collateral estoppel. (*Id.* at 5 (citing *B&B Hardware v. Hargis Indus, Inc.*, 135 S.Ct. 1293, 1305 (2015))). Smartflash contends that attempts to re-litigate the § 101 issue at the PTAB would impermissibly and collaterally attack the Court's § 101 decision. (*Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 493 n.10 (1994) (Souter, J., concurring) ("[T]he principle barring collateral attacks [is] a longstanding and deeply rooted feature of both the common law and our own jurisprudence . . . ."); *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1313 (Fed. Cir. 2014) (reasoning that collateral attacks on the PTAB's institution decisions are inappropriate))). Smartflash further asserts that the PTAB did not consider the Federal Circuit's *DDR Holdings* opinion or the Court's § 101 Order in the institution decisions. (Smartflash -448 Response at 6).

*The Court's Analysis*

As an initial matter, the Court notes that the -447 case was originally scheduled for trial at the same time as the Apple case. The Samsung trail was reset for August 2015 to allow the parties to take advantage of the Court's decisions in the Apple trial.

As a result, the Court's reasoning and analysis for this factor in the Apple litigation is largely applicable here. As in the Apple case, Samsung challenged the patents on almost every potential issue at the summary judgment stage before this Court. Samsung's Motion is primarily based on the PTAB's institution of CBM review under § 101 for the asserted patents.[15] As with the Apple litigation, the Court already decided the § 101 issue, and it is no longer a question before the Court. In other words, it will not be an issue at trial. Besides the § 101 issue, there is only one issue that the PTAB could decide and potentially simplify for the Court—anticipation (§ 102) of claims 2 and 11 of the '221 Patent. This one issue is quite narrow and would do little to streamline the trial overall.

In other words, an analysis of the benefits that support simplification lead the Court to the same conclusion that was reached in the Apple case.[16] For example, all the prior art that will be asserted at trial is not before the PTAB. Therefore the PTAB's "particular expertise" will not be utilized. The discovery problems that could be prevented by a PTAB proceeding have already taken place, as the Court has already dealt with multiple motions to compel, including one emergency motion to compel, held two hearings on these motions, and dealt with discovery and evidence issues at the first pretrial conference. (Smartflash's Motion to Compel, Dkt. No. 113 in 6:13-CV-448); (Smartflash's Emergency Motion to Compel, Dkt. No. 197). The Court has no specific evidence before it to conclude that PTAB proceedings would further settlement discussions, and the "more likely than not" standard does not equate to a "guarantee" that the claims will be held invalid.[17] Further, the record of PTAB proceedings would not reduce the

---

[15] The Court acknowledges that the '221 Patent claims are also being challenged on § 102 grounds.

[16] These benefits are listed above as well as in Judge Bryson's opinion in *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J.).

[17] The Court, however, does note that these two potential benefits favor Samsung's position more than Apple's position given that a jury trial has not yet occurred in the Samsung case.

complexity and length of the litigation, as this case is already complex, has been proceeding for over two years, and is on the eve of trial. Issues, defenses, and evidence have already substantially been dealt with in pretrial conferences, and both the parties and the Court have already incurred substantial cost that is not likely to be reduced (unless all asserted claims are cancelled in the PTAB's determination and such a determination is entirely affirmed).

As with the Apple case, the quickest and most efficient final resolution of the § 101 issue in the litigation would occur through appeal to the Federal Circuit. On either path the appellate court will be reviewing the same question of law on the same statutory grounds. On the current schedule, this case will likely be on appeal before the PTAB issues final decisions on just the § 101 validity of the asserted patents. Accordingly, this factor weighs against a stay.[18]

**(B) Whether discovery is complete and whether a trial date has been set**

*The Parties' Positions*

According to Samsung the appropriate time to measure the stage of litigation for the purposes of this "renewed" motion is May 2014 when Samsung filed the first motion to stay. (Samsung Motion at 8, Dkt. No. 495 in 6:13-CV-448 (citing *VirtualAgility*, 759 F.3d at 1317)). Samsung notes that at that time (over a year ago), the Court found the case was at an "intermediate stage," which weighed in favor of granting a stay. (*Id.* (citing Memorandum Opinion and Order Denying Stay at 8, Dkt. No. 175 in 6:13-CV-447)).

Samsung further contends that even considering the present stage of litigation, much work remains before the case is ready for trial, such as additional depositions, a possible

---

[18] Though not specifically before the Court, Smartflash's collateral estoppel arguments are noteworthy. Just as the Court is precluded from an impermissible collateral attack on the PTAB's institution decisions, the PTAB may have to give preclusive effect to the Court's judgment. In *B&B Hardware*, the Supreme Court recently noted that "[n]either is issue preclusion a one-way street" between district courts and administrative agencies. 135 S.Ct. at 1305–06 ("When a district court, as part of its judgment, decides an issue that overlaps with part of the TTAB's analysis, the TTAB gives preclusive effect to the court's judgment.").

response to an expert report, two pretrial conferences, and likely further motion practice on evidentiary issues. (Samsung Motion at 8–9). Additionally, Samsung asserts that the trial itself "will be a substantial endeavor," requiring testimony regarding three sets of technology from Samsung, HTC, and Google, overseas and out-of-state witnesses, and interpreters. (*Id.* at 9).

Smartflash responds that Samsung, in arguing that its case should be tried before the Apple case, already told the Court that the case was ready for trial months ago. (Smartflash -448 Response at 7, Dkt. No. 498 in 6:13-CV-448 (citing Jan. 6, 2015 Pretrial Hearing Tr. 8:19–20 ("[W]e feel that we're ready to go and we would like to be the first to defend ourselves."))). Further, Smartflash argues that the parties and the Court have already expended "vast resources" to get to this stage of litigation, and that the only remaining issues are evidentiary rulings, a deposition related to Samsung's own January 2015 damages rebuttal, and trial. (*Id.*) Smartflash contends that the remaining steps are relatively small compared to the work done on the case up to this point—"over [fifty] depositions, terabytes of source code production, millions of pages of documents, Orders on discovery disputes, claim construction, and summary judgment rulings on 'almost every potential trial issue.'" (*Id.* (citing Order Regarding Letter Briefs, Dkt. No. 312 in 6:13-CV-448)). Additionally, Smartflash argues that the Court can efficiently resolve the remaining issues in the case because of its familiarity with overlapping issues from the Apple litigation. (*Id.*)

Additionally, Smartflash urges the Court to reject Samsung's argument that it should consider May 2014 as the relevant stage of litigation. (*Id.* at 8). Smartflash points out that Samsung's first motion to stay relied on Apple's CBM petitions and corresponding motion to stay, which the Court denied in July 2014. (*Id.*) According to Smartflash, the correct date for the Court to consider in the stay analysis is when Samsung filed its present motion to stay on April 10, 2015. (*Id.*)

*The Court's Analysis*

As a preliminary matter, Samsung's present Motion to Stay is not a renewed motion. Samsung's May 2014 Motion was based Apple's Motion to Stay the -447 case and on Apple's March and April 2014 CBM petitions, none of which raised § 101 grounds. When the PTAB granted a few of those petitions in September, Samsung could have renewed its motion or filed another motion to stay at that time.[19] The September 2014 CBM petitions on which the present Motion is based have nothing to do with Apple's March and April 2014 CBM petitions. Thus, the present Motion to stay is unrelated to Samsung's May 2014 Motion because it is based on entirely different CBM proceedings. Accordingly, the Court does not consider it a renewed motion and does not consider that May 2014 is the appropriate time to measure the stage of litigation. Instead, the Court considers Samsung's motion on May 28, 2015—the time "the PTAB made its decision to institute CBM review" on the all the patents. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315 (Fed. Cir. 2014).

This case has been pending for two years. Discovery is complete, an initial pretrial conference has occurred, and trial is set for August 3, 2015. Despite the August trial date, this case is procedurally on the eve of trial. Samsung admitted as much when it asked the Court to proceed to trial before Apple, saying "we feel that we're ready to go and we would like to be the first to defend ourselves." (Jan. 6, 2015 Pretrial Hearing Tr. 8:19–20). All that remains before trial is a follow-on pretrial conference (taking into account the rulings from the Apple trial) and, apparently, depositions associated with an amended expert report. These small endeavors do not outweigh the fact that, to date, this case has required a similar amount of the Court's resources as

---

[19] That the Court did not formally deny Samsung's motion until December 2014 does not undermine this statement. By the express language of the Motion, Samsung only requested a stay if the Court decided to stay the -447 case: "[S]hould the Court determine that there is good cause to stay the -447 case pending resolution of that CBM review, Defendants respectfully request that the Court stay this action as well." (Samsung's First Motion to Stay at 1, Dkt. No. 149 in 6:14-CV-448). The Court denied the Motion to Stay in Apple litigation without prejudice on July 8, 2014.

the Apple litigation. Until the second pretrial conference in the Apple case when the Court split the two cases for independent trials, Apple and Samsung participated together in every major stage of the cases. Further, Samsung even sought to participate in the second pretrial conference in the -447 action. (Samsung's Emergency Motion for Leave to Participate, Dkt. No. 455 in 6:13-CV-448).

Considering whether Samsung acted with reasonable diligence in filing its CBM petitions, Samsung's sixteen-month delay in filing any CBM petitions was not justified. Just like Apple's, Samsung's summary judgment briefing on willfulness argued that its invalidity defenses were objectively reasonable and "available at the time of first alleged infringement" including "invalidity based on 35 U.S.C. § 101 (controlling law at the time)."[20] (Samsung's Reply in Support of their Motion for Summary Judgment at 1–2, Dkt. No. 357 in 6:13-CV-448). It is disingenuous for Samsung to tell this Court that it has had a good faith belief in its § 101 defense from the start of the case when discussing the topic of willfulness, then turn around and maintain that it needed more time to be sure about its § 101 defense when discussing filing for review at the PTAB. As with Apple, the Court is hard-pressed to find that Samsung acted (in filing petitions sixteen months after the case was filed) with reasonable diligence in filing CBM petitions raising a § 101 defense. Further, the same policy concerns that the Court discussed under the second factor in the Apple case apply with equal force here. If CBM review is intended to be a cost effective alternative to litigation, gamesmanship that turns it into a cost-increasing second chance at litigation must be discouraged. This factor weighs against a stay.

**(C) Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party**

*The Parties' Positions*

---

[20] This summary judgment argument undercuts Samsung justification for their delay in filing PTAB petitions under § 101 grounds due to any uncertainty related to the *Alice* decision in the months prior to when Supreme Court issued it on June 19, 2014.

Samsung makes the same arguments as Apple regarding the reasons that Smartflash will not suffer undue prejudice from a stay. (Samsung Motion at 9–10, Dkt. No. 495 in 6:13-CV-448). According to Samsung, it chose not to file its own CBM petitions in March and April 2014 after reviewing Apple's petitions in an attempt to avoid duplicative proceedings. (*Id.* at 11). Samsung asserts that when it filed its own CBM petitions on September 26, 2014, it "decided not to burden the Court with a renewed motion to stay" while uncertainty remained over its petitions. (*Id.*) Now, with reviews granted on its CBM petitions, Samsung asserts that it seeks "only a short stay" until the final PTAB decisions and that Samsung will suffer great prejudice if forced to litigate issues related to patent claims more likely than not invalid. (*Id.* at 11–12).

Smartflash counters that, as with Apple, splitting invalidity defenses provides a quintessential tactical advantage. (Smartflash -448 Response at 8, Dkt. No. 498 in 6:13-CV-448). Smartflash further argues that Samsung "has already obtained numerous risk-free bites at the invalidity issue at the PTAB" because it could wait on the results of the PTAB's decisions on Apple's invalidity theories first and may not risk estoppel for invalidity defenses in CBM petitions that the PTAB denied.[21] (*Id.* at 9–10).

Smartflash argues that it will suffer undue prejudice for the same reasons as with Apple. (*Id.* at 10). Smartflash adds that the timing of the request for administrative review and its status may indicate that a delay is unduly prejudicial. (*Id.* (citing Memorandum Opinion and Order Denying Stay at 8, Dkt. No. 175 in 6:13-CV-447)). Smartflash points out that Samsung's first ten CBM petitions were not filed until sixteen months after Smartflash's complaint, six months after Apple's first twelve petitions were filed, four months before the scheduled trial date at the time, and a few days before the PTAB's deadline on Apple's first twelve petitions. (*Id.* at 11). Smartflash asserts that the instituted PTAB proceedings will not conclude until six months after

---

[21] Smartflash notes that "[t]he effect of a non-institution decision on post-grant review estoppel will likely be determined by the Federal Circuit in *Synopsis, Inc. v. Mentor Graphics*, No. 14-1516."

the August trial date and that the proceedings for the '772 Patent lag behind by four additional months. (*Id.*)

Moreover, Smartflash again argues that decisions from either forum will be appealed, and that proceeding with the case and appealing the entire litigation is a better use of resources. (*Id.* at 11–12 (citing *Nixon*, 418 U.S. at 691 (1974))).

*The Court's Analysis*

The relationship and undue prejudice considerations between Smartflash and Samsung are almost identical as that of Smartflash and Apple. Smartflash does not compete with Samsung, does not risk loss of market share, can be compensated through monetary damages, and waited to file suit when it first knew of the alleged infringement.

With regard to considerations of tactical advantage to Samsung, as noted above, Samsung waited sixteen months after Smartflash filed its complaint before filing any petitions for CBM review. At the time, trial was scheduled to be held in just four months. By not filing CBM petitions of their own when Apple filed its March and April 2014 petitions, Samsung elected to wait such that it could choose different invalidity defenses without any risk of estoppel. By waiting to seek a stay until the eve of the PTAB's likely decisions on Apple's petitions, Samsung could maximize its advantage. Splitting invalidity defenses provides a tactical advantage. Similarly, Samsung's delay in filing CBM petitions raising its § 101 invalidity defenses all but ensured that the issue would be fully litigated in the Court before the PTAB made any institution decision, providing Samsung another opportunity to litigate the issue if the PTAB granted the petitions. Moreover, for no apparent reason, Samsung waited an additional four months to file similar petitions for a similar patent. Samsung finally challenged the '772 Patent on § 101 grounds in January 2015, just days before the Magistrate Judge issued her Report and Recommendation on the § 101 Motions for Summary Judgment.

Samsung lacks justification for waiting to file any CBM petitions until sixteen months into this litigation. A stay would present Samsung with a clear tactical advantage and encourage gamesmanship through the splitting of invalidity defenses and via the delayed filing of CBM petitions. Such practices run directly counter to the announced public policies underpinning CBM review. As with the Apple case, however, there is little evidence that Smartflash would suffer undue prejudice or irreparable harm from a stay. On balance, this factor also weighs against a stay

**(D) Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court**

*The Parties' Positions*

Samsung makes essentially the same arguments as Apple for this factor: the PTAB is likely to eliminate the need for further litigation and no extraordinary circumstances exist here. (Samsung Motion at 12–13, Dkt. No. 495 in 6:13-CV-448).

Smartflash responds that unless the PTAB cancels every asserted claim, a stay will increase the burden on the parties and the Court. (Smartflash -448 Response at 12, Dkt. No. 498 in 6:13-CV-448). According to Smartflash, the Court's prior experience with the patents from the Apple litigation weighs against a stay under this factor. (*Id.* (citing *VirtualAgility*, 759 F.3d at 1315 n.4)). Smartflash contends that the PTAB proceedings will only address one disputed issue, while delaying the case until ultimate resolution from the Federal Circuit will reduce efficiencies created by the Court's experience with related litigation. (*Id.* at 12–13).

*The Court's Analysis*

Samsung's delay in filing CBM petitions leaves the Court and the parties to face a very similar situation as in the Apple litigation: the majority of civil ligation costs have already been spent; the parties and Court have carried the burden of litigation to just shy of trial; and in

response to Samsung's eleventh-hour petitions, the PTAB has just begun its entirely separate effort to duplicate the Court's existing determination of a pure question of law.

With respect to the burden, a substantial amount of resources have already been spent in this case and the additional litigation will not outweigh the efforts expended thus far. To date in the Samsung case, the Court has entertained four emergency motions, issued nearly 400 pages of opinions and orders and recorded 508 docket entries. The parties have filed, and the Court has read, 1,251 pages of briefing and 16,015 pages of associated attachments on significant disputes, including motions to dismiss, motions to compel, motions to strike and exclude, motions for summary judgment on numerous issues, protective orders, *Daubert* motions, and claim construction. In other words, Samsung—like Apple—does not appear to have used the PTAB proceedings as an alternative to district court litigation. Instead, Samsung also appears to have used the PTAB proceedings as a way to increase the costs of an already burdensome litigation while also positioning itself for a second shot at the invalidity target. Relative to the amount of resources already expended and the late stage of this litigation at the eve trial, the Court finds that that the PTAB's determination of the § 101 issue and § 102 issue for 2 claims will not substantially reduce the further burden of litigation to a significant degree.

Finally, as with the Apple case, the "more likely than not" standard is not a "guarantee" that all asserted claims will be cancelled. Similarly, this case's current schedule will allow for appeals to reach to the Federal Circuit prior to appeals from final PTAB decisions. An appeal from the Court will allow the Federal Circuit to decide more than just the two specific invalidity issues before the PTAB. Thus, piecemeal appeals can be avoided by proceeding to trial in this litigation, which will decrease the burden on the courts and the parties (in every scenario except where the PTAB cancels every asserted patent and the Federal Circuit affirms its decision to do

so). In the interests of reaching a final resolution to the case as quickly as possible, this case presents a set of circumstances that counsel against granting a stay under the fourth factor.

In sum, all four factors weigh against granting a stay. Like the Apple case, "seeing the case to its conclusion maximizes judicial and party resources," and discourages gamesmanship in the timing of late filed CBM petitions. Accordingly, a stay of the Samsung litigation is also unwarranted and should be denied.

***Google Litigation (-435 case)***

Google also argues that all four factors weigh heavily in favor of staying this action for the duration of the PTAB proceedings. Smartflash opposes.

**(A) Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial**

*The Parties' Positions*

Google argues that the PTAB has already found five of the seven asserted patents more likely than not invalid, and it expects the PTAB to find the same in the pending decision on the other two. (Google Motion at 8, Dkt. No. 167 in 6:14-CV-435). The Court observes that on May 28, 2015, the PTAB instituted review of the '772 Patent as well. Google points to statistics as of December 31, 2014, showing that the PTAB has cancelled 100% percent of claims on which it instituted CBM review based on § 101 grounds and 85% of claims for reviews instituted on any grounds. (*Id.*) Google contends that the PTAB is unlikely to change its view about the validity of the asserted claims after further proceedings because § 101 is a question of law. (*Id.* at 9). Google asserts that the "likely cancellation of Smartflash's patents" is the ultimate simplification of issues because it will dispose of the entire litigation. (*Id.*) Moreover, Google argues that Apple will soon present claim construction and validity issues to the Federal Circuit that will impact all of the Smartflash litigation, which also favors a stay in this case. (*Id.* at 9–10).

Smartflash counters that because Google participated in the -448 case,[22] the Court's § 101 Order in that case may bind it for the previously asserted claims. (Smartflash -435 Response at 3, Dkt. No. 171 in 6:14-CV-435). Smartflash urges that even if estoppel does not apply, the Court may rely on its previous reasoning and will likely conclude that asserted claims in this case are valid under § 101. (*Id.*) According to Smartflash, *VirtualAgility* does not bar the Court from "merely adhering to its own already-made judicial conclusions," because the policy

---

[22] Google agreed to defend Samsung and the two entities share counsel.

of avoiding "'mini-trials' on invalidity issue issues" is not implicated. (*Id.* at 4 (citing *VirtualAgility*, F.3d at 1314)). Smartflash contends that the PTAB proceedings may never reach a final decision. (*Id.*) In Smartflash's view, if the -447 and -448 cases reach final judgment, collateral estoppel applies to the PTAB proceedings. (*Id.* (citing *B&B Hardware*, 135 S. Ct. at 1305; *Heck*, 512 U.S. at 493 n.10)). As Smartflash discussed in its Response to Samsung's Motion to Stay (Smartflash -448 Response at 9–10, Dkt. No. 498 in 6:13-CV-448), the prospect of simplification related to non-§ 101 petitions is unlikely because of the narrow CBM estoppel provisions. (Smartflash -435 Response at 5). According to Smartflash, the PTAB rejected almost 90% of Apple and Samsung's petitions on grounds other than § 101. (*Id.*)

*The Court's Analysis*

Google's arguments overlook the fact that the Court has already determined the § 101 issue as to six of the seven asserted patents concerning which it argues the PTAB could ultimately simplify. The Court already conducted its own analysis, and there is no "mini-trial" to be avoided. As to the seventh, recently issued '516 Patent, Google's argument that it can expect the PTAB to find the patent more likely than not invalid under § 101 is unavailing. As noted above, the Patent Office issued the '516 Patent in August 2014, two months after the Supreme Court issued the *Alice* decision. Therefore, whether the PTAB will institute CBM review on the '516 Patent is uncertain and the Court should not speculate about what the PTAB will or will not decide. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1313 (Fed. Cir. 2014) (warning that when district courts speculate as to PTAB outcomes, it "create[s] serious practical problems.").

On balance, this factor is neutral.

## (B) Whether discovery is complete and whether a trial date has been set

*The Parties' Positions*

Google argues that this case is still at an early stage:

> The majority of discovery has yet to occur. The parties have not completed electronically stored information production. No depositions have taken place. The document production deadline—July 3, 2015—is still two months away. The formal close of fact discovery—July 27, 2015—is nearly three months away. Expert discovery, none of which has taken place, will remain open for over four months, until September 11, 2015.

(Google Motion at 10, Dkt. No. 167 in 6:14-CV-435 (internal citations omitted)). Google further notes that the Court has not held the *Markman* hearing and that the dispositive and *Daubert* motion hearing is not for another eight months. (*Id.* at 10–11). Google also notes that trial is almost a year away.[23] (*Id.*) Google contends that the Court found that when the Apple and Samsung cases were in a similar "intermediate stage," this factor weighed in favor of granting a stay.[24] (*Id.*)

Smartflash responds that the parties and the Court have already expended significant resources through Google's participation in the Samsung litigation. (Smartflash -435 Response at 6, Dkt. No. 171 in 6:14-CV-435). Smartflash argues that much of the work that remains is a result of Google's own "dilatory actions in refusing to produce relevant discovery" in both this case and the -448 case. (*Id.*) Further, Smartflash contends that trial is set for March 28, 2016, "merely [eleven] months" away, around when the PTAB will issue decisions regarding the twelve instituted reviews. (*Id.*) However, Smartflash argues that trial will occur far in advance of any decision on the twenty remaining asserted claims. (*Id.*)

---

[23] The Court postponed the *Markman* hearing originally scheduled for May 14, 2015 to June 4, 2015 in order to give the Court time to consider the stay briefing.

[24] "Apple contends that the parties and Court will waste significant resources on depositions, claim construction briefing, expert reports and discovery, and summary judgment briefing if a stay is not granted. . . . This case is at an intermediate stage. It was filed ten months before Apple filed its Motion to Stay." (Memorandum and Opinion Denying Stay at 8, Dkt. No. 175 in 6:13-CV-447).

*The Court's Analysis*

Similar to when Apple filed its first Motion to Stay in the -447 case, this case is at an intermediate stage. A trial date has been set for March 2016, but substantial discovery has yet to occur. However, the Court must also consider whether Google acted with reasonable diligence in filing CBM petitions and a motion to stay. Prior to the Court's May 4, 2015 Order requiring briefing from Google on the stay issue, Google had not filed any petitions for CBM review or moved for a stay pending the resolution of CBM reviews filed by Apple or Samsung. Given Google's active participation in the Samsung litigation, Google's knowledge that Smartflash has alleged infringement of Google Play since May 2013, and Google's and Samsung's shared counsel, Google's delay seems dilatory. Although the Court previously found this factor favored a stay when the Apple litigation was similarly situated, concerns about Google's delay in filing any CBM petitions or motions to stay cause this factor to now only slightly favor a stay.[25]

**(C) Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party**

*The Parties' Positions*

Google raises similar arguments as Apple and Samsung, asserting that Smartflash's only business is litigation, Smartflash does not compete with Google, and that money damages will sufficiently compensate Smartflash for any delay in the case. (Google Motion at 12, Dkt. No. 167 in 6:14-CV-435). Additionally, Google similarly argues that Smartflash's delay in filing suit against Google, even waiting a year after filing the case against Samsung involving Google products, shows it will not be prejudiced by a stay. (*Id.* at 12). Moreover, Google, like Samsung, also contends it will suffer prejudice if it is forced to litigate issues related to patent claims that the PTAB decided are more likely than not invalid. (*Id.* at 13).

---

[25] In light of Google's heavy involvement in the Samsung litigation and that Google contemplated filing petitions in November 2014 (discussed below), the reasons Google provided below for not filing any CBM petitions are not compelling. Since that time, while the briefing was pending, Google has filed five CBM petitions.

Google argues that it was not feasible to file PTAB petitions earlier in the case because Smartflash asserted one hundred patent claims. (*Id.*) According to Google, Smartflash waited to narrow asserted claims until it could see which CBM reviews the PTAB instituted. (*Id.*) Google contends that after Smartflash reduced the number of asserted claims to thirty-two on March 26, 2015, it could then reasonably begin preparing and filing CBM petitions. (*Id.* at 14). Moreover, Google asserts that Smartflash has to face a large number of CBM petitions only because of its own choice to assert different claims against different defendants. (*Id.*) According to Google, this is a foreseeable result of Smartflash's hedging litigation strategy. (*Id.*)

Smartflash responds again that splitting invalidity defenses cuts against any issue simplification. (Smartflash -435 Response at 7, Dkt. No. 171 in 6:14-CV-435). Smartflash argues that Google primarily seeks a stay to allow it and others to re-litigate an issue the court already decided with Google's participation. (*Id.*) Smartflash asserts that allowing Google, Apple, and Samsung to re-litigate issues at the PTAB undermines the design of the AIA to "establish a more efficient and streamlined patent system." (*Id.* (quoting H.R.Rep.No. 112–98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69)). Further, Smartflash asserts that a stay will give Google the tactical advantage it has sought all along through "frivolous" discovery objections, and allowing Google to drive up costs through filing an "abusive" number of CBM petitions. (*Id.*) In Smartflash' view, the "mountains" of "iterative" CBM petitions against the same claims reflect a concerted effort by the "Defendant Group" to drain Smartflash's resources while resolving no actual issues. Moreover, Smartflash argues that Google's two-year delay in filing CBM petitions after learning of the alleged infringement of Google Play disfavors a stay. (*Id.*) According to Smartflash, Google considered filing petitions as early as last November. (*Id.* at 9 (citing Nov. 3, 2014 Email from Google's Counsel to Smartflash's Counsel, Dkt. No. 171, Ex. B)).

Moreover, Smartflash asserts that the "flurry of CBM petitions filed as a direct result" of the Court's May 4 Order for briefing shows that Google only seeks delay and tactical advantages. (*Id.*) Smartflash points out that before the Court's Order, no petition had been filed for the '516 Patent. (*Id.*) Smartflash contends that Google only filed its petitions when it did in an attempt to support its efforts to delay the case. (*Id.*) Additionally, as it did with the other Defendants, Smartflash asserts its undue prejudice arguments related to inherent prejudice from a stay and effects on its licensing efforts. (*Id.* at 10).

*The Court's Analysis*

Again, Smartflash has not demonstrated that it will suffer undue prejudice from a stay. It is somewhat disturbing that Google—who is well versed in the patents-in-suit, accused products, the Samsung litigation, and Samsung's PTAB proceedings—had to be ordered by the Court to discuss staying this case. It is quite possible that Google will simply use the stay to file other PTAB proceedings. Nevertheless, staying the case now does not give Google the same clear tactical advantage as Defendants in the Apple and Samsung cases. Even though the Court decided many of the same issues for the same patents, Google itself has not litigated the invalidity grounds in the Court such that the PTAB provides a second chance at litigation.[26] On balance, this factor weighs against a stay.

**(D) Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court**

*The Parties' Positions*

Google makes the same basic arguments as Apple and Samsung for this factor: the PTAB is likely to eliminate the need for further litigation and no extraordinary circumstances exist here. (Google Motion at 15, Dkt. No. 167 in 6:14-CV-435).

---

[26] The Court notes that the same counsel are involved in both the Samsung and Google cases, and Google agreed to defend Samsung.

Smartflash responds that the Court has already expended substantial resources on all but one of the patents-in-suit. (Smartflash -435 Response at 10, Dkt. No. 171 in 6:14-CV-435). Smartflash asserts that Google has caused additional burden because Smartflash previously agreed to allow Google to consolidate this case with the Samsung litigation. (*Id.*) According to Smartflash, Google had concealed its participation in the Samsung litigation, but it was not willing to accommodate the -448 schedule without causing "substantial delay." (*Id.*)

*The Court's Analysis*

The opportunity remains to meaningfully reduce the overall burden on the Court and the parties with a stay. Although there are overlapping issues with the earlier Apple and Samsung cases, the parties and the Court still have substantial work to do in this case. Accordingly, this factor weighs in favor of a stay.

In sum, the first factor is neutral, the second and third factors slightly favor a stay, and the fourth factor favors a stay. Accordingly, granting a stay is warranted in Google's case.

*Amazon Litigation (-992 case)*

Amazon contends that all four factors weigh heavily in favor of a stay. Smartflash disagrees.

## (A) Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial

Amazon argues that it is very likely that the PTAB will ultimately find many of the claims asserted in the other litigations unpatentable under § 101, and that many of those terms are asserted in the Amazon Litigation. (Amazon Motion at 3–4, Dkt. No. 37 in 6:14-CV-992). As did Google, Amazon points out that the PTAB has cancelled 100% of claims on which it has instituted reviews under § 101. (*Id.* at 4). Amazon asserts that courts stay cases pending CBM review "almost as a matter of course" when even just a subset of claims is under review. (*Id.* (citing *Versata Software, Inc. v. Callidus Software*, 771 F.3d 1368, 1371 (Fed. Cir. 2014) ("Stays can be warranted even when a CBM proceeding does not address all asserted patents, claims, or invalidity defenses."); *NFC Tech. LLC*, 2015 WL 1069111 at *7)). Moreover, Amazon contends that the similarities in the patents also make it highly likely that the PTAB will institute review on '516 Patent, which still awaits an institution decision.[27] (*Id.* at 4–6).

## (B) Whether discovery is complete and whether a trial date has been set

Amazon points out that this case, which was filed on December 19, 2014, is in its very early stages—no discovery has occurred and no trial date or schedule has been set. (Amazon Motion at 7). Thus, Amazon concludes that this factor heavily favors a stay. (*Id.* (citing *VirtualAgility*, 759 F.3d at 1317)).

## (C) Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party

---

[27] Smartflash's brief does not respond to each factor, so its arguments are summarized below Amazon's discussion of the factors.

For this factor, Amazon essentially raises the same arguments as the other defendants: Smartflash is not a competitor and does not make products; Smartflash can be fully restored through monetary relief; and Smartflash has not moved for a preliminary injunction. (Amazon Motion at 8). Amazon further argues that institution of CBM review more greatly impacts Smartflash's licensing efforts than any stay would. (*Id.* (citing *Benefit Funding Sys. LLC v. Advance Am. Cash Advance Ctrs. Inc.*, 767 F.3d 1383, 1385 (Fed. Cir. 2014))). Amazon contends that, given the case's early stage, a stay will not give it a clear tactical advantage. (*Id.* at 9).

**(D) Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court**

Amazon argues that the Court must give effect to the PTAB's determination, which, according to Amazon, is nearly certain to find the patents invalid. (Amazon Motion at 9). Further, Amazon argues that a stay could avoid costly and unnecessary litigation on causes of action that "will be mooted" by final PTAB determinations. (*Id.*) Additionally, Amazon asserts that even if some claims survive CBM review, the Court will benefit from the PTAB's review. (*Id.*)

Smartflash responds to Amazon's analysis of the factors by arguing that a ruling on a stay in this case is premature. (Smartflash -992 Response at 2, Dkt. No. 38 in 6:14-CV-992). Smartflash contends that it has not elected claims to assert, that Amazon had not elected invalidity defenses, and that the PTAB has not made institution decisions for one of the patents. (*Id.*) Smartflash recognizes that if the PTAB found all challenged claims invalid under § 101, issues would likely be simplified, but according to Smartflash, that outcome is unlikely based on the Court's reasoning on the issue in the -447 and -448 cases. (*Id.* at 3). Moreover, Smartflash again contends that *VirtualAgility* is distinguishable from this scenario because the Court has

already undertaken a § 101 analysis for the patents-in-suit and there is no "mini-trial" or collateral attack to avoid. (*Id.* at 3–4).

Further, Smartflash maintains that a final judgment from the Court may collaterally estop the PTAB proceedings. (*Id.*) Smartflash notes that findings of "not invalid" in district courts have not bound the PTO in reexamination, but asserts that this was because of different applicable standards—clear and convincing evidence in courts compared to a preponderance of the evidence at the PTO. (*Id.* at 5 (citing *Fresenius USA, Inc. v. Baxter Int'l*, 721 F.3d 1330, 1343-44 (Fed. Cir. 2013))). Smartflash argues that in "the post-*Alice* § 101 world, substantial authority supports the conclusion that the PTO and district courts no longer apply different standards at all." (*Id.* (citing Apple's Motion for § 101 JMOL, Dkt. No. 550 in 6:13-CV-447)). Smartflash additionally contends that even if estoppel does not apply, Federal Circuit reasoning from an appeal in the Apple or Samsung litigation will bind both the PTAB and the Court under *stare decisis* such that current PTAB proceedings are duplicative and a waste of resources. (*Id.*)

The Amazon case is in its very early stages and has only recently had its scheduling conference. Substantial opportunities remain for cost-savings and issue simplification. As previously noted, Smartflash will not be unduly prejudiced by a stay. Moreover, there is no evidence that Amazon has known of its alleged infringement for more than a few months. Smartflash's arguments about whether a stay is premature run counter to the policies underlying Congress's intended purpose of CBM review. Accordingly, staying the Amazon litigation in its present stage is warranted.

## CONCLUSION

A stay is unwarranted in the Apple and Samsung litigation, and a stay is warranted in the Google and Amazon litigation. Accordingly,

(1) Apple's Motion To Stay Litigation Pending Covered Business Method Review (Dkt. No. 546 in 6:13-CV-447) is **DENIED**;

(2) Samsung's Renewed Motion to Stay Litigation Pending Covered Business Method (Dkt. No. 495 in 6:13-CV-448) is **DENIED**;

(3) Google Inc.'s Response to the Court's May 4, 2015 Order and Motion to Stay Litigation Pending Covered Business Method Review (Dkt. No. 164 & Dkt. No. 167 in 6:14-CV-435) is **GRANTED**; and

(4) The Amazon litigation (Case No. 6:14-CV-992) is **STAYED** until otherwise ordered by the Court.

**So ORDERED and SIGNED this 29th day of May, 2015.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

<u>**APPENDIX A – SUMMARY OF DATES**</u>

- May 29, 2013 – Smartflash filed suit against Apple (6:13-CV-447) and Samsung (6:13-CV-448);

- March 28 and April 3, 2014 - Apple filed twelve CBM petitions against every patent in the Apple and Samsung cases, raising invalidity defenses on §§ 102 and 103 grounds;

- April 3, 2014 - Apple filed a motion to stay pending CBM review;

- May 7, 2014 – Smartflash filed suit against Google (6:14-CV-435);

- May 15, 2014 – Samsung filed a motion to stay pending CBM review based on Apple's motion and CBM review petitions;

- July 8, 2014 – The Court denied Apple's motion to stay pending CBM review without prejudice;

- September 26, 2014 - Samsung filed ten petitions for CBM review of the patents-in-suit, asserting an invalidity defense on § 101 grounds for the first time;

- September 30, 2014 – PTAB denied institution of CBM review for the majority of Apple's petitions and instituted on a few claims across four of the asserted patents;

- October 24, 2014 – Apple and Samsung filed identical motions for summary judgment for invalidity on § 101 grounds;

- October 30, November 3, 24 & 25, 2014 – Apple filed nine additional CBM review petitions, six of them raising § 101 grounds;

- November 4, Smartflash § 101 Response is filed.

- December 2, 2014 – The Court held a joint dispositive/*Daubert* motions hearing in the Apple and Samsung cases;

- December 29, 2014 – Smartflash filed suit against Amazon (6:14-CV-992)

- January 6, 2015 – The Court held a joint pretrial conference in the Apple and Samsung cases;

- January 15, 2015 - Samsung filed an additional CBM petition seeking review of the '772 patent on § 101 grounds;

- January 21, 2015 – The Court issued a Report and Recommendation finding that the all asserted patents in the Apple and Samsung were valid under § 101;

- January 26, 2015 – The Court held a second pretrial conference in the Apple case, splitting it for individual trial;

- February 4, 2014 – The Court held a final pretrial conference in the Apple case;

- February 12, 2015 – Smartflash narrowed asserted patents against Apple to four claims from three patents;

- February 13, 2015 – The Court issued an Order adopting the Court's earlier Report and Recommendation to deny the motions for summary judgment of invalidity under § 101 in the Apple and Samsung cases;

- February 16-24, 2015 – The Court held trial in *Smartflash v. Apple*;

- February 24, 2015 – A jury returned a verdict in favor of Smartflash at the conclusion of the *Smartflash v. Apple* trial;

- February 25, 2015 – Smartflash filed suit against Apple (6:15-CV-145) again

- March 30 and April 2, 2015 – The PTAB instituted proceedings on all of the asserted claims from four of the asserted patents in the Samsung case under § 101;

- April 30, 2015 – Apple files four CBM review petitions

- May 1, 2015 – Deadline for Apple/Smartflash to file post-trial motions

- May 5, 2015 – Initial conference call in the PTAB proceedings on two instituted claims from September petitions

- May 6–8, 2015 – Apple files six CBM review petitions against Smartflash

- May 6–8, 2015 – Google files three additional CBM review petitions against Smartflash

- May 11, 2015 – Apple files another CBM review petition against Smartflash

- May 13, 2015 – Google files another CBM review petition against Smartflash

- May 16, 2015 – Google files another CBM review petition against Smartflash

- May 28, 2015 – PTAB institutes decision for the '772 Patent

- July 1, 2015 – Post-trial hearing for Apple case

- August 3, 2015 – Trial date for Samsung case

- December 22, 2015 – *Smartflash v. Google* summary judgment hearing scheduled

- March 28, 2016 – Trial date for Google case

- March 30 and April 2, 2016 – The PTAB's deadline for final decisions on first round of instituted CBM reviews

- May 28, 2016 – The PTAB's deadline final decision on the '772 Patent